THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CÁNDIDA ROSA VEGA ROMÁN, Defendant and Appellant.

No. CR-64-228.  Decided June 30, 1965.

*Celedonio Medín Lozada* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Nilita Vientós Gastón, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Appellant was accused of grand larceny. The facts which gave rise to the information were the following. Mrs. Mathews, her husband, her brother-in-law, and two children were going to the beach in the jurisdiction of Mayagüez. On their way they stopped to buy some things in a hardware store situated on Méndez Vigo Street. All of them left the automobile. Mrs. Mathews left two handbags on the back seat of the automobile. The automobile was not locked. Defendant passed by the parked automobile. As Mrs. Mathews returned to the automobile she saw defendant nearby and her behavior made Mrs. Mathews suspicious. Upon arriving at the automobile she noticed that the handbags had disappeared. By then defendant was not around. The police was notified. Mrs. Mathews described the person she saw near the automobile and of whom she suspected. She informed that one of the handbags contained some jewels: a watch, a wedding ring set, a ring, a bracelet and a pair of earrings. She stated they were worth $425. Two weeks later the owner of the jewels went with a detective to a house in Ward Buenos Aires in Mayagüez. They were received by the same person who was near the automobile the day the handbags disappeared. They requested her to deliver the jewels. She said that a friend called Noemí had them and that she was going to ask her for them. That she would return them in the afternoon. In the afternoon she returned them in a preconsigned place, but the bracelet was missing. She promised it for the next day and actually she returned it also. She was accused of grand larceny.

The foregoing is substantially the evidence for the prosecution. The owner of the jewels testified in the terms stated, but with more details. She stated that when defendant received her, she had on her finger the wedding rings and when she saw her she went into a room and changed them for other rings. She also testified that the jewels were worth $470.

Defendant did not deny the essential facts. She denied that she had taken them from the automobile. She affirmed she had found them near the vehicle. That she kept the jewels to return them to the owner when she should appear as she actually did.

The jury found her guilty of grand larceny by a verdict of ten to two. The judge imposed a penalty of three to seven years in the penitentiary.

Two of the errors assigned present a serious question which is directed to the core of the fair and impartial trial, cornerstone of individual freedom.

Defendant testified in the terms aforestated. When she finished her testimony her counsel asked her whether she had ever committed larceny in her life. She answered no and that is the end of the direct examination. The prosecuting attorney starts his cross-examination and the following takes place:

"Prosecuting Attorney:

Q. The last question was whether you had ever committed larceny in your life. Madam, how much do you weigh now?

A. It is some time since I weighed myself.

Q. More or less?

"Mr. Palés:

That has not been the object of the examination.

"Judge:

What is the materiality?

"Prosecuting Attorney:

It is a preliminary question. I promise the court that it is material.

"Witness:

About ninety-six pounds.

"Judge:

The question is permitted.

"Mr. Palés:

And if they should not be preliminary?

"Judge:

Their elimination would be ordered.

"Prosecuting Attorney:

I tell the court it is proper. I am not going to swear something as a professional and as prosecuting attorney . . .

"Judge:

She said, about ninety-six pounds.

"Prosecuting Attorney:

Q. How much?

A. You can judge.

Q. Has that been your weight for a long time?

A. I have always been this thin.

Q. That stout. Have you always kept that weight for the last twenty years?

A. Yes.

Q. And now you say you did not steal those jewels? Is that right?

A. No. (nodding)

Q. Speak it out.

A. Well, yes.

"Prosecuting Attorney:

Q. Since your husband provides you with everything, you do not need to steal?

A. Yes, sir.

Q. Does your husband feed you well?

A. Yes.

Q. When your husband gave you the engagement ring were you weighing the same as you do now? Were you as thin as you are now?

A. I have always been this thin.

Q. And when he gave you the wedding ring were you just the same?

A. When he gave me the wedding ring it was too big for me.

"Mr. Palés:

We object. Let it be eliminated.

"Judge:

Sustained.

"Prosecuting Attorney:

Q. And for how long have you had this little ring?

A. Well, since I got married.

Q. How long ago?

A. I have been married eight years.

Q. You tell the ladies and gentlemen of the jury that you have worn those rings with adhesive tape around them for eight years because they were too big for you? What do you say? That you have always worn them with the adhesive tape?

A. Why, sure.

Q. When he gave it to you, you did not tell him to have it fixed?

A. I am not a person to wear much earrings or that goes out; if he does not invite me to go out I do not go out . . . I stay at home with my three children.

Q. Finished? I ask you now whether or not you went to try that ring on when your husband gave it to you.

"Mr. Palés:

Do not answer. We do not see the material relevancy. We do not see how the question of whether or not she tried on the ring eight years ago can be raised. That we do not see the culmination of the preparation in the fact whether she did or did not try on a ring eight years ago. We respectfully request the prosecuting attorney to stop that kind of interrogation in relation as to whether or not she tried the ring on eight years ago.

"Prosecuting Attorney:

The prosecuting attorney said it was preliminary and the court said it was proper. She says that these rings belong to her and the jury will determine whether they are or are not hers. That ever since she had them they were too big for her.

"Mr. Palés:

It is argumentative.

"Judge:

The materiality is being explained. What do you want, do you want the jury to be withdrawn?

"Prosecuting Attorney:

I withdraw the question. The jury has heard enough."

We understand that this line of questioning seriously prejudiced defendant. It was very improper of the prosecuting attorney to try to establish that defendant had committed previous thefts in the manner he tried to do it in the preceding interrogatory. Evidently defendant was prejudiced by the remark of the prosecuting attorney referring to the rings that defendant was wearing during the trial and which were not the ones object of the theft, to the effect that "she says that these rings are hers, and the jury is going to determine whether they are hers or not. That ever since she had them they have always been too big for her." She was not accused of stealing the rings she was wearing. Something alien to the proceeding was improperly introduced: that defendant had committed thefts previously. That the prosecuting attorney knew that that remark benefited his case is shown by the remark when the defense objected. "I withdraw the question. The jury has heard enough."

Certainly, this incident prejudiced the defendant if we consider that her defense consisted in establishing that she had found the jewels and that she had kept them to return them when the owner appeared. To establish the truth of her position defendant emphasized that she had not disposed of the jewels in any manner whatsoever, and that, actually, she had them in her possession when the owner, accompanied by the detective, came to her house in search of them.

Evidently, the intent to show that defendant had committed larceny in previous occasions prejudiced defendant. Particularly since the manner in which the prosecuting attorney tried to establish it is contrary to law. The prosecuting attorney must present his case in conformance with the

established rules which warrant an impartial and fair trial. In the present case defendant did not have such a trial.

■ In a written confession offered the same day that the defendant delivered the jewels she admitted having taken the handbag containing the jewels from the automobile. In other words, she admitted the commission of the offense charged. When she testified at the trial she affirmed that she had found the handbag under the automobile. To impeach that statement the prosecuting attorney presented the sworn statement offered in the investigation of the case. It was read to the jury and the jury took it along when they retired to deliberate.

■ In *People* v. *Ramos*, 84 P.R.R. 542 (1962), ratified in *People* v. *Cruz*, 87 P.R.R. 124 (1963), we stated that ordinarily, to allow the written confession to go to the jury, in violation of the provisions of § 274 of the Code of Criminal Procedure (similar to Rule 140 of the Rules of Criminal Procedure of 1963) would entail the reversal of the judgment and the granting of a new trial. In reasserting the established ruling we did not acknowledge the exception invoked by the trial judge to permit defendant's written confession to go to the jury. The judge stated that the confession was admitted for the sole purpose of impeaching defendant's statement at the trial and that for that reason the jury would have it before them during deliberation. But the truth is that the prosecuting attorney could impeach defendant's statement by reading to the jury the previous written confession.

Certainly, the purpose of impeaching cannot be taken as a pretext to disregard Rule 140, or our ruling in *Ramos*. In cases of impeachment the reason for the ruling is still present. "[I]t is unfair to defendant that the jury should have before them a written document that they can read and reread as many times as they wish and in which the

defendant admits the commission of the offense charged against him, while they only have a recollection of the oral testimony presented at the trial in his defense. And normally the written document which is read has more force than the oral testimony." *Ramos*, pp. 549–550.

For the reasons stated the judgment will be reversed and a new trial granted.